## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

**CAROLYN JOHNSON**
        **Plaintiff,**

**v.**                                          **Case No.: 3:08cv236/MCR/MD**

**ALBERTSON'S LLC,**
        **Defendant.**

_____

## REPORT AND RECOMMENDATION

Defendant Albertson's removed plaintiff's discrimination claim from the Florida Commission on Human Relations to this court.  (Doc. 1).  After careful consideration of the record in this case, the undersigned concludes that the instant dispute is not a "civil action brought in a State court" within the meaning of the removal statute, and that remand is appropriate.[1]

## BACKGROUND AND PROCEDURAL HISTORY

On December 17, 2007, plaintiff filed a complaint of employment discrimination with the Florida Commission on Human Relations ("FCHR"), contending that Albertson's discriminated against her on the basis of her race,

_____

[1]A federal court is obligated to inquire into the existence of subject matter jurisdiction *sua sponte* whenever it may be lacking, and removal jurisdiction is no exception.  *University of South Alabama v. American Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999); *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 831, 119 S.Ct. 2295, 2307, 144 L.Ed.2d 715 (1999) (stating that a federal court "must be sure of its own jurisdiction before getting to the merits"); 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."); Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

gender, age and disability, in violation of the Florida Civil Rights Act of 1992 (FCRA), Fla. Stat. §§ 509.092 and 760.01-760.11; Title VII of the Federal Civil Rights Act; the Age Discrimination in Employment Act; and the Americans with Disabilities Act.[2] (Doc. 1, Ex. 1).  On March 25, 2008, the FCHR determined that by virtue of an adverse inference drawn from Albertson's failure to provide requested information, reasonable cause existed to believe unlawful discrimination had occurred.  (Doc. 1, Ex. 2).[3]  On March 25, 2008, the parties were provided a notice of the determination. Plaintiff was advised that she could elect to request an administrative hearing (by filing a petition for relief) or file a civil action in state court.  (Ex. 3).  Plaintiff filed a petition for relief with the FCHR on April 16, 2008.  (Ex. 4).  On May 23, 2008, the FCHR transmitted the petition to the Division of Administrative Hearings with instructions to assign the matter to an administrative law judge, conduct all necessary proceedings, and submit recommended findings to the FCHR.  (Ex. 5). On May 27, 2008 the assigned administrative law judge issued an initial order and summary of procedures.  (Ex. 6).  On June 9, 2008, Albertson's removed the action to this court.

## DISCUSSION

The right to remove a case from state to federal court derives from the statutory grant of jurisdiction in 28 U.S.C. § 1441, which provides in relevant part:

> [A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

28 U.S.C. § 1441(a).  Section 1441 is strictly construed.  *University of South Alabama*

---

[2]Plaintiff is a black female, forty-two years old, and suffers from a heart condition. She claimed Albertson's harassed her, denied her wages and involuntarily transferred her.  (Doc. 1, Ex. 1).

[3]Hereafter, all references to exhibits are to those attached to Doc. 1.

*v. Am. Tobacco Co.*, 168 F.3d 405, 411 (11th Cir. 1999) ("Because removal jurisdiction raises significant federalism concerns, federal courts are directed to construe removal statutes strictly [and] all doubts about jurisdiction should be resolved in favor of remand to state court.").  The Eleventh Circuit has yet to decide whether cases may be removed from state administrative agencies pursuant to § 1441, and if so, under what circumstances.  *See Bellsouth Telecomm., Inc. v. Vartec Telecom, Inc.*, 185 F.Supp.2d 1280, 1281 (N.D. Fla. 2002) (noting that "[t]he issue of removal of an administrative proceeding is one of first impression in this circuit.").  The decisions from other circuits are split on how to approach the issue.  Some circuits have applied a "functional" test, allowing removal in cases in which a state administrative agency essentially functions as a court.  *See Floeter v. C.W. Transport, Inc.*, 597 F.2d 1100, 1101-02 (7th Cir. 1979); *see also Volkswagen de Puerto Rico, Inc. V. Puerto Rico Labor Relations Bd.*, 454 F.2d 38, 44 (1st Cir. 1966) (dictum).  Other courts have rejected the "functional" approach as contrary to the plain language of the removal statute.  *Oregon Bureau of Labor & Indus. ex rel. Richardson v. U.S. West Communications, Inc.*, 288 F.3d 414, 419 (9th Cir. 2002); *Sun Buick, Inc. v. Saab Cars, USA, Inc.*, 26 F.3d 1259, 1263 (3rd Cir. 1994); *County of Nassau v. Cost of Living Council*, 499 F.2d 1340 (Temp. Emer. Ct. App. 1974) (disapproving the functional test and stating that §1441(a) contemplates removal from other court proceedings rather than the "interruption of administrative proceedings").  Utilizing either approach, the undersigned concludes that Albertson's removal under § 1441 was improper.

In issues of statutory construction, the court looks first to the statutory language.  If it is clear and consistent with the statutory scheme, the plain language is conclusive.  *See Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6, 120 S.Ct. 1942, 1947, 147 L.Ed.2d 1 (2000) ("[W]e begin with the understanding that Congress says in a statute what it means and means in a statute what it says there. . . . [W]hen the statute's language is plain, the sole function of the

courts – at least where the disposition required by the text is not absurd – is to enforce it according to its terms." (citations and internal quotation marks omitted)); *United States v. LaBonte*, 520 U.S. 751, 757, 117 S.Ct. 1673, 1677, 137 L.Ed.2d 1001 (1997) ("We do not start from the premise that this language is imprecise.  Instead, we assume that in drafting this legislation, Congress said what it meant."); *see also United States v. Fisher*, 289 F.3d 1329, 1338 (11th Cir. 2002) ("The plain language is presumed to express congressional intent and will control a court's interpretation.").

The plain language of § 1441(a) limits removal to cases pending before a "State court."  Albertson's does not argue that the term "State court" is ambiguous, nor does the undersigned believe that it is.  The term is clear and consistent with the overall statutory scheme for removals because it is used several times throughout the removal statutes and is the only term used in reference to the tribunal from which removal may be taken.  Therefore, as the Ninth and Third Circuits have held, the language of § 1441(a) "should be dispositive."  *Sun Buick*, 26 F.3d at 1261; *Oregon Bureau of Labor*, 288 F.3d at 418.  Because § 1441(a) authorizes removal only from a "State court" which necessarily implies that the entity in question must be a court, and the FCHR is an administrative agency as opposed to a court, removal is improper.

Even applying the functional test, the undersigned would reach the same conclusion.  The functional test involves two elements.  First the court must consider "the functions, powers, and procedures of the state tribunal" to determine whether the entity functions as a court.  *Floeter*, 597 F.2d at 1102.  Second, the court must evaluate "the respective state and federal interests in the subject matter and in the provision of a forum."  *Id.*  Courts have referred to the second element of the functional test as "the more critical inquiry."  *Rockville Harley-Davidson, Inc. v. Harley-Davidson Motor Co., Inc.*, 217 F.Supp.2d 673, 679 (D. Md. 2002); *Ginn v. North Carolina Dep't of Corrections; Division of Prisons*, 829 F.Supp. 804, 806 (E.D. N.C. 1993) (calling the second component of the test "more important").

Albertson's argues that the FCHR meets the first prong of the test because "[j]udgments of the FCH[R] are final and enforceable, and the agency does not have to go to court to enforce its order." (Doc. 1, p. 7). Albertson's believes its position is further supported by the fact that the Florida legislature provides complainants with the option of electing an administrative hearing as an alternative to filing a civil action, Fla. Stat. § 760.11(4), and that this means that Florida "considers a Plaintiff's rights to be equally adjudicated whether the matter is tried before the FCHR or a court of competent jurisdiction." (*Id.*, p. 8). Albertson's concludes that "it is the Commission's function as a court of the state authorized to conduct hearings and award damages for alleged violations of Florida's civil rights law that makes this matter proper for removal." (*Id.*). The problem with Albertson's argument is that even if this court agreed that the functions and powers of the FCHR are much like those of a court, the proceedings of the FCHR do not meet the second test for removability.

It is evident from the federal employment discrimination statutes as well as the Florida statutes which make the FCHR a deferral agency for employment discrimination claims, that both federal and state interests in the subject matter of the dispute and the provision of a forum strongly favor treating FCHR hearings as administrative, rather than judicial proceedings. *See Floeter*, 597 F.2d at 1102 (holding that in addition to the subject matter of the dispute, the court must consider the federal interest in the provision of a forum). The purpose of the deferral provisions of the ADEA, 29 U.S.C. § 633(b), Title VII, 42 U.S.C. § 2000e-5(c), and the ADA, *see* 42 U.S.C. § 12117, are to provide states the first opportunity to resolve discrimination claims under state law, before a federal court proceeding is invoked. *Oscar Mayer & Co. v. Evans*, 441 U.S. 750, 99 S.Ct. 2066, 60 L.Ed.2d 609 (1979) (interpreting ADEA's deferral provision); *E.E.O.C. v. Commercial Office Products Co.*, 486 U.S. 107, 117-19, 108 S.Ct. 1666, 1672-73, 100 L.Ed.2d 96 (1988) (concluding that Title VII's deferral period "was meant to give States a reasonable opportunity to act under State law before the commencement of any Federal proceedings") (internal quotation marks and citation omitted); *Kremer v. Chemical Const. Corp.*, 456 U.S.

461, 473, 102 S.Ct. 1883, 1893, 72 L.Ed.2d 262 (1982) ("The Senate bill that was finally signed into law widened the state role by guaranteeing all States with fair employment practices laws an initial opportunity to resolve charges of discrimination."); *Love v. Pullman Co.*, 404 U.S. 522, 526, 92 S.Ct. 616, 618, (1972) (stating that the purpose of Title VII's deferral provision is "to give state agencies a prior opportunity to consider discrimination complaints.").

As another district court has aptly put it, "The deferral provisions serve the federal interest of 'screening out' of federal court those disputes which can be resolved at the state level, as well as the state interest in avoiding undue federal intervention in state administrative affairs." *Ginn*, 829 F.Supp. at 806; *see also Oscar Mayer*, 441 U.S. at 755, 99 S.Ct. at 2071 (Title VII's deferral is designed to give state agencies "a limited opportunity to resolve problems of employment discrimination and thereby to make unnecessary, resort to federal relief by victims of discrimination.").  Allowing an employer to remove a petition for relief from the state human relations commission to federal court would undermine both of these interests, and subvert Congress' intent to guarantee that States with functioning anti-discrimination programs "be given every opportunity to employ their expertise and experience without premature interference by the Federal Government." *Kremer*, 456 U.S. at 473, 102 S.Ct. at 1893 (quoting 110 Cong. Rec. 12725 (1965)). Because the FCHR does not satisfy the second prong of the functional test to be a "State court," the court concludes that this action does not lie within federal removal jurisdiction, and that Albertson's removal under § 1441(a) was improper.[4]

---

[4]Albertson's states in a footnote that "federal courts in other jurisdictions have expressly held that state human rights commissions and labor boards functioned as state courts and, accordingly, removal was proper." (Doc. 1, p. 8 n. 4). It cites two cases for this proposition, *Volkswagen de Puerto Rico, supra*; and *Tool and Die Makers Lodge No. 78 Int'l Assoc. of Machinists, AFL-CIO v. Gen. Elec. Co. X-Ray Dep't*, 170 F.Supp 945 (E.D. Wis. 1959).  Both of these cases involve the removal of complaints filed by unions with state labor boards. Neither of them involve removal of an employment discrimination claim from a state human rights commission.  The only published federal case the undersigned has found involving the latter is *Ginn, supra*.  In that case, the district court came to the same conclusion as the undersigned – that such a case is not removable.

## CONCLUSION

The Florida Commission on Human Relations is not a "State court" under § 1441(a).  This case should be remanded as improvidently removed.

Accordingly, it is respectfully RECOMMENDED:

1.  That the removal be DISMISSED as improper.

2.  That this proceeding be remanded to the Florida Commission on Human Relations' Division of Administrative Hearings.

3.  That the clerk be directed to take all action necessary to effect the remand, and close this file.

At Pensacola, Florida, this 20th day of June, 2008.

/s/ *Miles Davis*

**MILES DAVIS**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy hereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).